NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

OSMAN ALFREDO AGUILAR-OSORIO, *Appellant.*

No. 1 CA-CR 25-0227

FILED 07-01-2026

Appeal from the Superior Court in Maricopa County
No. CR2023-106700-001
The Honorable Kristin Culbertson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph A. Newberg, II
*Counsel for Appellee*

Law Office of Michael J. Dew, Phoenix
By Michael J. Dew
*Counsel for Appellant*

----

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Anni Hill Foster and Judge D. Andrew Gaona joined.

----

**G A S S**, Judge:

¶1             Osman Alfredo Aguilar-Osorio appeals his convictions and sentences for second-degree murder and aggravated assault. Aguilar-Osorio argues the superior court erred when it did not admit evidence of the murder victim's prior criminal acts to support his self-defense claim. Aguilar-Osorio also argues the State produced insufficient evidence to convict him of aggravated assault on the assault victim. Because the superior court did not err in rejecting Aguilar-Osorio's proffered evidence or denying his Rule 20 motion regarding the aggravated assault charge, the court affirms.

## FACTUAL AND PROCEDURAL HISTORY

¶2             The court views the facts in the light most favorable to sustaining the superior court's ruling. *See State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998). The court will not reweigh the evidence on appeal. *State v. Lee*, 189 Ariz. 590, 603 (1997).

I.      **After Aguilar-Osorio started getting behind on payments for the property, the murder victim arrived at the property claiming ownership.**

¶3             Aguilar-Osorio owned a house in Phoenix. He fell behind on mortgage payments after an illness. The murder victim and his Spanish-speaking employee (who worked at a motel the murder victim owned and who is also the assault victim) went to the house unarmed. The murder victim claimed to have bought the house at an auction and planned to rent the property out to the assault victim. The murder victim needed the assault victim to translate that information to Aguilar-Osorio in Spanish. The parties stipulated the assault victim had no ownership interest in the property.

¶4             When the victims arrived at the house, the murder victim posted "sold" notices near the front door while the assault victim rang the doorbell. After the assault victim told Aguilar-Osorio what was happening,

Aguilar-Osorio replied, "How is it your house, you son of a bitch?" Aguilar-Osorio then opened the security door and invited the 2 victims inside.

¶5        Inside, Aguilar-Osorio told the assault victim he wanted to keep the house and asked the murder victim to stop recording. When the murder victim walked out back toward the carport, Aguilar-Osorio became more upset and quickly followed him. The assault victim followed shortly afterward. Though Aguilar-Osorio asked the murder victim not to go into the carport, he did anyway. Inside the carport, the murder victim removed a pole propping open the trunk of Aguilar-Osorio's SUV, causing it to slam shut. When the murder victim turned around, Aguilar-Osorio used his knife to cut the murder victim's neck. The murder victim died of blood loss.

¶6        When the assault victim got to the carport, he saw Aguilar-Osorio come out of the carport holding a bloody knife. The assault victim froze, and Aguilar-Osorio told him to "leave if you don't want any problems." The assault victim said he was shocked, promptly went back inside, and left through the front door. In leaving, the assault victim walked backwards so he could watch Aguilar-Osorio to be sure he would not attack. When the assault victim got back to the murder victim's motel, he called the police.

¶7        At the same time, Aguilar-Osorio called 911 and confessed. Aguilar-Osorio said he was "fed up" with the bank and people trying to rip him off. So when the victims arrived at the property, Aguilar-Osorio said he felt threatened and wanted to teach them a lesson.

**II.     After a grand jury indicted Aguilar-Osorio, he filed 1 motion before trial and moved for a Rule 20 motion in furtherance of his self-defense claim.**

¶8        A grand jury indicted Aguilar-Osorio for 1 count of second-degree murder and 1 count of aggravated assault. Before trial, Aguilar-Osorio learned the murder victim had been convicted of sexual abuse of his female employees. Aguilar-Osorio moved to admit evidence of the murder victim's prior acts of sexual abuse, arguing the evidence was necessary for him to present a complete defense. The superior court denied the motion after oral argument. Though the superior court concluded Aguilar-Osorio could meet the evidentiary burden by clear and convincing evidence, it found the claims of sexual abuse and harassment were not relevant to Aguilar-Osorio's own description of what happened on the day of the incident. The superior court found the murder victim causing the trunk to slam shut and turning around unarmed were too different from the murder

victim's alleged sexual abuse of his female employees. The superior court also found allowing the evidence would be too prejudicial because the similarities would not be specific enough.

**¶9**     The assault victim testified consistent with the above description of events. During trial, Aguilar-Osorio moved under Rule 20 for a judgment of acquittal as to both counts. The superior court denied the motion as to both counts, finding sufficient evidence to proceed with the jury.

**¶10**     Aguilar-Osorio, then testified in support of his self-defense claim, referring to the murder victim as a "son of a bitch" and a "fucking idiot." Aguilar-Osorio asserted when he and the murder victim were in the carport, the murder victim approached Aguilar-Osorio and got on top of him, which made him confused and fearful. Though Aguilar-Osorio first testified he only hit the murder victim "with this hand," he later acknowledged cutting the murder victim's throat.

**¶11**     The jury convicted Aguilar-Osorio on 1 count of second-degree murder and 1 count of aggravated assault. The superior court sentenced Aguilar-Osorio to concurrent terms of 16 years on the second-degree murder count and 7.5 years on the aggravated assault count, giving him 820 days of presentence incarceration credit.

**¶12**     The court has jurisdiction over Aguilar-Osorio's timely appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, 13-4031, and -4033.A.1.

## DISCUSSION

**¶13**     Aguilar-Osorio argues the superior court erred by (1) refusing to allow evidence of the murder victim's prior criminal acts and (2) denying his Rule 20 motion as to the aggravated assault charge against him.

**¶14**     The court reviews the superior court's evidentiary rulings for abuse of discretion. *State v. Inzunza*, 234 Ariz. 78, 83 ¶ 18 (App. 2014). The superior court abuses its discretion if "no reasonable judge would have reached the same result under the circumstances." *State v. Armstrong*, 208 Ariz. 345, 354 ¶ 40 (2004) (citation omitted). And the court reviews a Rule 20 motion in determining the sufficiency of the evidence *de novo. See State v. Anderson*, 255 Ariz. 320, 323 ¶ 7 (App. 2023).

**¶15**     "[T]he court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no

substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "Substantial evidence is proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Haywood*, 257 Ariz. 472, 481 ¶ 35 (App. 2024) (cleaned up). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the [superior court] judge has no discretion to enter a judgment of acquittal." *Id.* (citing *Lee*, 189 Ariz. at 603). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

## I. The superior court did not abuse its discretion when it refused to admit the murder victim's prior acts as part of Aguilar-Osorio's self-defense claim.

¶16        Aguilar-Osorio argues the superior court erred when it excluded evidence of the murder victim's history of committing sexual abuse. He argues the superior court should have admitted the prior acts by "taking out the sexual nature completely" because it completes his self-defense and defense of property arguments. The court disagrees.

¶17        Under Rule 404, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b)(1). Such "evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b)(2). Before admitting prior specific-acts evidence, a court must determine:

1. The conduct is established by clear and convincing evidence and the person alleged to have committed it did so;

2. The evidence is offered for a proper purpose under Rule 404(b);

3. The evidence is relevant to prove the stated purpose; and

4. The evidence has sufficient probative value which will not be substantially outweighed by undue prejudice under Rule 403.

*State v. Fish*, 222 Ariz. 109, 123 ¶ 43 (App. 2009).

¶18        Though the murder victim's convictions proved the "specific acts" by clear and convincing evidence, the superior court did not err when

5

it found Aguilar-Osorio failed to prove the remaining *Fish* elements. Aguilar-Osorio identifies no proper purpose to which the sexual abuse convictions were relevant. Instead, he relies heavily on *Fish* to assert the superior court should have admitted this evidence to corroborate his version of the events leading up to the murder.

**¶19** True, *Fish* acknowledges corroboration of a self-defense claim may be a proper purpose under Rule 404(b). *Id.* at 125 ¶ 49. But the murder victim's sexual abuse convictions here had no tendency to corroborate Aguilar-Osorio's self-defense claim. Though a prior bad act need not be identical in every detail, the appellant still must show sufficient similarity between the two crimes. *See id.* (holding "such evidence may have been admissible . . . [if it] is very similar to [the] proffered evidence of prior bad acts"). Sexual abuse of a female employee in no way relates to Aguilar-Osorio's version of events and thus does not support his credibility. In *Fish*, the appellant made specific claims about the victim's uniquely aggressive behavior which were corroborated by "very similar" acts of evidence. *Id.* In contrast, the murder victim's prior specific-acts here were against his female employees and sexual in nature. But Aguilar-Osorio sought to use them to support a self-defense claim based on non-sexual behavior and without the overlay of an employer/employee relationship. The murder victim's convictions simply were too dissimilar to be admissible under Rule 404(b).

**¶20** This specific-acts evidence also was inadmissible to show Aguilar-Osorio's state of mind at the time of the murder because he did not know about the sexual abuse. In *Fish*, the court held "evidence of specific violent acts by the Victim is not admissible to prove a defendant's state of mind and reasonableness unless the defendant claiming self-defense knew of the specific acts prior to the incident in question." 222 Ariz. at 121 ¶ 37. Aguilar-Osorio acknowledged the murder victim was a stranger to him and he learned of the other acts only through discovery in his criminal case.

**¶21** Unfair prejudice means an undue tendency to suggest a decision on an improper basis such as emotion, sympathy, or horror. *State v. Schurz*, 176 Ariz. 46, 52 (1993). Because there is a risk the jury would "see the victim as a bad man who had gotten what he deserved," it is sufficient to preclude evidence under Rule 403. *See State v. Zaid*, 249 Ariz. 154, 159 ¶ 17 (App. 2020). Here the record does not show a high degree of similarity between the sexual abuse of the murder victim's female employees and his alleged behavior toward Aguilar-Osorio. And without the predisposed knowledge of the murder victim's specific acts, its probative value is substantially outweighed by a danger of unfair prejudice. The superior

court thus did not abuse its discretion when it excluded the sexual abuse convictions.

**II.    The superior court did not err when it found the State introduced sufficient evidence to support convicting Aguilar-Osorio of aggravated assault of the assault victim.**

**¶22**        Aguilar-Osorio argues the superior court erred in denying his motion for judgment of acquittal for aggravated assault. Not so.

**¶23**        To support his argument, Aguilar-Osorio acknowledges the assault victim may have been "apprehensive" something could recur if he failed to leave the property. But Aguilar-Osorio then argues the assault victim's "apprehension" was not one of imminent harm. At its core, Aguilar-Osorio's description is consistent with the definition of imminent.

**¶24**        "[A] person commits aggravated assault if the person" intentionally places another person in "reasonable apprehension of imminent physical injury" using a deadly weapon or dangerous instrument. A.R.S. §§ 13-1203.A.2, -1204.A.2. "Imminent" means "(Of a danger or calamity) threatening to occur immediately." *Imminent*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also In re Drummond*, 257 Ariz. 15, 18 ¶ 7 (2024) ("Absent a statutory definition, courts generally give words their ordinary meaning and may look to dictionary definitions."). As the court has explained, including "the qualifying word 'imminent,'" has avoided "criminal convictions based on speculative or attenuated theories that could produce uncertainty and unpredictability." *See State v. Dominguez*, 236 Ariz. 226, 229 ¶ 5 (App. 2014). It is not as limiting as Aguilar-Osorio contends.

**¶25**        Based on the evidence the State presented, the jury could reasonably find Aguilar-Osorio intentionally placed the assault victim in reasonable apprehension of imminent physical injury. Aguilar-Osorio was holding a bloody knife when he told the assault victim to please leave. And the assault victim had just heard Aguilar-Osorio scream at the murder victim, calling him a "son of a bitch" and a "fucking idiot."

**¶26**        Though the assault victim said he was not scared as he left, he did say he was shocked. The assault victim explained he left because: "there was no reason for me to confront him. He just asked me to leave. I got out. He was following me. I was making sure he was not going to attack me from behind." The evidence thus was sufficient to prove Aguilar-Osorio committed aggravated assault against the assault victim.

¶27      At bottom, Aguilar-Osorio asks the court to view the facts in the light most favorable to setting aside the superior court's ruling. *See Fontes*, 195 Ariz. at 230 ¶ 2. And Aguilar-Osorio further asks the court to reweigh the evidence, which the court will not do. *Lee*, 189 Ariz. at 603. Based on the court's review of the record and viewing the facts in the light most favorable to affirming the superior court's ruling and the conviction, the superior court did not err by finding more than sufficient evidence for a jury to find Aguilar-Osorio intentionally placed the assault victim in reasonable apprehension of imminent physical injury.

## CONCLUSION

¶28      The court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR